UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                           Case No. 3:22-cr-157

           Plaintiff,

    v.                                          MEMORANDUM OPINION
                                                AND ORDER

Robert Hines,
           Defendant.

## I.     INTRODUCTION

Before me is Defendant Robert Hines's motion to dismiss Counts 1 and 2 of the indictment. (Doc. No. 14). The government filed a brief in opposition. (Doc. No. 16). Hines filed a brief in reply. (Doc. No. 17). For the reasons that follow, I deny Hines's motion.

## II.     BACKGROUND

On April 6, 2022, Hines was charged by a three-count indictment. (*See* Doc. No. 7). Counts 1 and 2 alleged he had possessed a firearm while knowing he had previously been convicted of a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Doc. No. 7). The indictment alleges Hines was previously convicted of Grand Theft, Identity Fraud, Improperly Handling Firearms in a Motor Vehicle, Possession of Fentanyl, Trafficking in Fentanyl, and Tampering with Evidence, all in the Lucas County, Ohio Court of Common Pleas. (*Id.* at 1). It further alleges he knowingly possessed two different firearms, a Sturm Ruger .308 caliber pistol and a FNH USA .45 caliber pistol, each on a separate occasion. (*See id.* at 1-2). Count 3 of the indictment charged Hines with possession with intent to distribute a controlled

substance under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), though that count is not a subject of Hines' current motion. (*Id.* at 3).

On August 23, 2024, after the parties finished briefing this motion, the Sixth Circuit Court of Appeals decided *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), which held that 18 U.S.C. § 922(g)(1) is facially constitutional under the Second Amendment and established a framework for evaluating as-applied challenges to the statute like the one Hines brings. *See* 113 F.4th at 657-61. In light of this development, I held a telephone status conference on September 12, 2024, to determine if either party wished to supplement their briefing to address *Williams*. (*See* non-document entry dated Sep. 12, 2024). Neither party did. (*See id.*).

### III.  ANALYSIS

**A.  SECOND AMENDMENT CHALLENGE**

Hines argues § 922(g)(1) is unconstitutional as applied to him because it "improperly and unconstitutionally deprive[s] him of his Second Amendment rights." (Doc. No. 14 at 2). Citing the dockets for several of his alleged prior convictions, he asserts he is "neither a violent nor a dangerous person" and thus cannot be prosecuted for possessing a firearm as a convicted felon. (Doc. No. 17 at 2; *see* Doc. Nos. 17-1, 17-2, & 17-3). For legal support, he cites *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and *United States v. Hostettler*, No. 23-cr-654, 2024 WL 1548982 (N.D. Ohio April 10, 2024).[1] Before turning to the analysis required by the Sixth Circuit's decision in *Williams*, I address the precedent on which Hines relies.

---

[1] Between the date Hines filed his Motion and the date the government filed its brief in opposition, the United States Supreme Court decided *United States v. Rahimi*, 144 S. Ct. 1889 (2024). *Rahimi*, the first major Supreme Court case to apply the *Bruen* framework since *Bruen* itself, upheld 18 U.S.C. § 922(g)(8)—a statute criminalizing the possession of a firearm by a person under certain domestic violence-related protection orders—under the Second Amendment. The government addressed this new precedent in its brief in opposition; Hines did not do so in his brief in reply. (*See* Doc. No. 16 at 35; Doc. No. 17 at 3).

First, *Bruen*. Like Hines, *Williams* relied on *Bruen*'s "history and tradition" analysis. *Williams*, 113 F.4th at 649. But as I describe below, *Williams* concluded that § 922(g)(1) is facially constitutional under the Second Amendment and that in an as-applied challenge, a defendant can only succeed if they show they are not dangerous. So Hines's bare citation to *Bruen* does not help him.

Second, for related reasons, *Hostettler* does not change the result either. In that pre-*Williams* case, which evaluated an as-applied challenge, the court found the Second Amendment barred the prosecution of the defendant under § 922(g)(1) because the government did not point to a history and tradition of disarming individuals with the defendant's specific underlying felony conviction. *Hostettler*, 2024 WL 1548982 at *4-5.

Crucially, *Hostettler* placed the burden on the *government* to "establish[] that [the] Defendant's underlying felony is 'distinctly similar' to the historical analogues that support disarmament based on dangerousness." *Id.* at *4 (internal citations omitted). Unfortunately for Hines, *Williams* squarely rejected that approach. Now, "the burden rests on [the defendant] to show he's not dangerous," and the government is not required to "produc[e] evidence of his prior convictions and prov[e] that disarming him is consistent with history and tradition." 113 F.4th at 662. Because *Hostettler*'s analysis is not in accord with subsequent, authoritative Sixth Circuit precedent, I decline to rely on it.

*Williams* now guides my evaluation of Hines's Second Amendment claim. *See* 113 F.4th at 662-63. Applying the analytical approach inaugurated in *Bruen* and refined in *Rahimi*, the Sixth Circuit first concluded § 922(g)(1) is facially constitutional under the Second Amendment because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Williams*, 113 F.4th at 657. Then, the court addressed the defendant's as-applied Second Amendment challenge. Observing that "an as-applied challenge is an odd match for § 922(g)(1)" because it "doesn't provide a mechanism allowing individuals to prove the class-wide

presumption shouldn't apply to them," the court delineated a framework for such a "mechanism." *Id.*

When evaluating an as-applied challenge to 18 U.S.C. § 922(g)(1) under the Second Amendment, a district court must independently determine whether an individual charged under the statute is "dangerous" such that the Second Amendment does not shield them from prosecution. *Williams*, 113 F.4th at 657.[2] In doing so, a court "must focus on each individual's specific characteristics," considering "the individual's entire criminal record." *Id.* This includes "any evidence of past convictions in the record, as well as other judicially noticeable information. . . such as prior convictions." *Id.* at 660.

But this is no "categorical" inquiry. *Williams*, 113 F.4th at 660 (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016) by way of counterexample). Instead, "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Williams*, 113 F.4th at 660. This task also involves the exercise of judicial common sense, such as a court's "informed judgment about how criminals commonly operate." *Id.* (internal citation and quotation marks omitted). Further, in an as-applied challenge to § 922(g)(1), it is Hines's burden "to show he's not dangerous," rather than the government's burden to show he is. *Williams*, 113 F.4th at 662.

---

[2] One wrinkle is that *Williams* addressed a post-conviction challenge to § 922(g)(1), and Hines brings his challenge pre-trial. But nothing in *Williams* suggests a fundamentally different inquiry should apply to a pre-trial Second Amendment challenge. Just as "a court can accept prior convictions without an evidentiary hearing or jury fact finding" in the sentencing context, *Williams*, 113 F.4th at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)), so must I "view the [i]ndictment's factual allegations as true" in evaluating Hines's motion to dismiss. *Costello v. United States*, 350 U.S. 359, 363 (1956). As I explain below, the nature of the evidence is somewhat different, because, unlike in *Williams*, there is no presentence report on which I can rely. *See Williams*, 113 F.4th at 662. Instead, I take the truth of the indictment's allegations about Hines's prior convictions as a starting point, but because *Williams* requires a "fact-specific" inquiry that depends "on the unique circumstances of the individual defendant," I consider other relevant evidence, too. *Id.* at *16.

*Williams* analyzed three classes of prior convictions. First, "crimes against the person," a category including many common law felonies like rape, murder, and robbery, "speak directly to whether a person is dangerous" in the Second Amendment context. *Id.* at 658. While *Williams* formally left as an "open question" whether "crimes in this bucket are dispositive," a defendant with a prior conviction for a crime directly involving physical harm or a serious physical threat carries an "extremely heavy" burden to disprove their presumed dangerousness. *Id.* In fact, dangerousness may be "self-evident" from a prior conviction falling in this category. *Id.* at 660.

The second class of offenses are "not strictly crimes against the person" but "may nonetheless pose a significant threat of danger. These crimes do not always involve an immediate and direct threat of violence against a particular person," but "most of [them] put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659. One example is "drug trafficking," which "poses a danger to the community" and "often leads to violence." *Williams*, 113 F.4th at 659 (quoting *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)) (internal citation and quotation marks omitted). Another is burglary, which "creates the possibility of a violent confrontation between the offender and occupant." *Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)) (internal quotation marks omitted).

The final category of crimes includes those which "cause no physical harm to another person or the community." *Williams*, 113 F.4th at 659. Unlike the first two classes of offenses, "many of these crimes," such as mail fraud or making false statements, "don't make a person dangerous." *Id.* In all, the gravamen of *Williams*'s analysis is physical harm. A prior conviction for an offense directly involving significant physical harm to one or more persons is very likely to make a defendant dangerous enough to be disarmed under the Second Amendment, while a prior conviction that is highly attenuated from such harm is unlikely to render a defendant dangerous. *See id.* at 657-60.

5

Before turning to the circumstances of Hines's alleged prior convictions, it is worth outlining the types of evidence *Williams* requires and permits me to consider. I noted above that the procedural context of *Williams* is not a perfect fit for this case because *Williams* involved a post-sentencing challenge to a § 922(g)(1) conviction, while this case involves a pre-trial motion to dismiss the indictment. *See Williams*, 113 F.4th at 662. As a result, no facts have yet been found by a judge or jury, and I also do not have the advantage of a thorough presentence report to inform my analysis. *See id.*

But at the motion to dismiss stage, I must treat the allegations in the indictment as true. *See, e.g., United States v. Roman*, 17 F. Supp. 3d 706, 708 (S.D. Ohio 2014). And *Williams* places "the burden . . . on [the defendant] to show he's not dangerous." *Williams*, 113 F.4th at 662. So, even though I view the allegations in the indictment as true by default, Hines may point to evidence of his "specific characteristics" to rebut the presumption that he is dangerous. *Id.* at 657.

The *Williams* court also "recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness," noting that *Rahimi* had considered a state court-issued civil restraining order. *Williams*, 113 F.4th at 658 n.12 (citing *Rahimi*, 144 S. Ct. at 1895). While *Williams* left "the question of what information is relevant for another day," I conclude its emphasis on evaluating "each individual's specific characteristics" militates in favor of considering the evidence Hines cites, such as the nature of the sentence imposed for Hines's prior convictions along with the explanation offered on the record by the sentencing judge. *Williams*, 113 F.4th at 657, 658 n.12; (*see* Doc. Nos. 17-1, 17-2, & 17-3).

Applying *Williams*, I conclude Hines has not met his burden to show he is not dangerous. The indictment cites six prior convictions in the Lucas County, Ohio Court of Common Pleas: grand theft, identity fraud, improperly handling firearms in a motor vehicle, possession of fentanyl, trafficking in fentanyl, and tampering with evidence. (*See* Doc. No. 7). Of those six, grand theft,

improperly handling firearms in a motor vehicle, and trafficking in fentanyl most strongly suggest dangerousness.

Grand theft in Ohio is the purposeful obtaining or exertion of control over the property or services of another person without or beyond the scope of that person's consent, by deception, by threat, or by intimidation, where the value of the property or services is between $7,500 and $150,000. Ohio Rev. C. § 2913.02(A)-(B). It is a fourth–degree felony that was punishable at that time, and is punishable today, by a prison term of between 6 and 18 months. *Id.* § 2913.02(B)(2); Ohio Rev. C. § 2929.14(A)(4). The Lucas County Court of Common Pleas case number identified in the indictment indicates Hines pled no contest to one count of grand theft and was sentenced to a term of 14 months in prison in 2010. *See State v. Hines*, non-document entries dated March 15, 2010 & March 29, 2010, No. G-4801-CR-0200902948 (Lucas Cnty. C.P.). He was also required to pay restitution of $5,208.79 to an insurance company and $1,000 to a named natural person. *State v. Hines*, non-document entry dated March 29, 2010, No. G-4801-CR-0200902948 (Lucas Cnty. C.P.).

The "judicially noticeable information" on the Lucas County Court of Common Pleas docket does not provide any way to determine the underlying facts of Hines's grand theft conviction. *Williams*, 113 F.4th at 660. Therefore, it is not possible to say, at this stage, whether Hines's grand theft offense involved behavior that was more attenuated from the risk of physically harming another person—such as an act exceeding the boundaries of consent to use property or an act of deception—or, instead, behavior that put a person's physical safety at greater risk, such as a threat or an act of intimidation. *See id.* at 659 (explaining that crimes carrying "the possibility of a violent confrontation" justify a finding of dangerousness) (internal citation and quotation marks omitted).

Still, it is Hines's burden to show a prior conviction does not make him dangerous, and he does not address this prior conviction at all. (*See* Doc. Nos. 14 & 17). Further, Hines's sentence of

14 months for a felony with a statutory range of 6 to 18 months indicates, at the very least, that his grand theft crime did not involve the least serious type of that behavior. *See* Ohio Rev. C. § 2929.14(A)(4). And given *Williams*'s focus on the possibility of physical harm to human beings, it is likewise significant that Hines's grand theft offense appears to have involved a natural person victim. *Hines*, non-document entry dated March 29, 2010, No. G-4801-CR-0200902948 (Lucas Cnty. C.P.).

Based on this judicially noticeable information, I conclude Hines's grand theft offense, as alleged in the indictment, falls into the second *Williams* category of crimes posing "a significant threat of danger" to a person or to the community. *Williams*, 113 F.4th at 663. Because Hines offers no argument about this offense, and thus fails to rebut the "class-wide presumption" of dangerousness that attaches to it, I further conclude this alleged prior conviction contributes to a finding that Hines is dangerous. *Id.* at 657.

Next, the government alleges Hines was convicted of improperly handling firearms in a motor vehicle. (*See* Doc. No. 7). The Lucas County Court of Common Pleas case number alleged in the indictment indicates Hines pled no contest to one count of improperly handling firearms in a motor vehicle under Ohio Revised Code § 2921.16(B) and was sentenced to three years of community control but no prison time. *See State v. Hines*, non-document entries dated April 3, 2019 & April 29, 2019, No. G-4801-CR-0201801132 (Lucas Cnty. C.P.). The statute criminalizes "knowingly transport[ing] or hav[ing] a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Ohio Rev. C. § 2923.16(B).

This docket, too, contains little information about the facts of the underlying offense. But, as I have just noted, the statute is more specific: Hines's offense involved knowingly transporting an accessible loaded firearm in a motor vehicle. *See id.* Hines was not sentenced to a term of incarceration for this offense, which may diminish its seriousness. But *Williams* indicates a prior

8

firearms possession offense supports a finding of dangerousness. After listing Williams's previous convictions, which included a felon-in-possession offense, the court stated that "any one" of them would suffice to show he is dangerous. *Williams*, 113 F.4th at 662.

This makes sense because irresponsible firearms behavior—such as possessing an accessible loaded gun in a motor vehicle—endangers "the community" at large and heightens the risk of a "violent confrontation." *Id.* at 659 (internal citations and quotation marks omitted); *see Muscarello v. United States*, 524 U.S. 125, 132-33 (1998) (acknowledging Congress's judgment in § 924(c)(1) that an individual who commits a felony while carrying a gun in their car is no "less dangerous, or less deserving of punishment, than [one] who carr[ies] handguns on their person"). Further, as with the grand theft offense above, Hines makes no effort to explain why a prior conviction for a firearms possession offense would not bring him within § 922(g)(1)'s constitutionally permissible scope. (*See* Doc Nos. 14 & 17). I conclude Hines's previous firearms possession offense, like the offense in *Williams*, supports a finding that Hines is dangerous.

Finally, the government points to Hines's prior conviction for trafficking fentanyl. (*See* Doc. No. 16 at 37). According to the docket for the case number alleged in the indictment, Hines pled no contest to one count of Trafficking in a Fentanyl Related Compound, in violation of Ohio Revised Code §§ 2925.03(A)(2) & (C)(9)(c). *See State v. Hines*, non-document order dated March 16, 2020, No. G-4801-CR-0201902513 (Lucas Cnty. C.P.). These provisions of the Ohio criminal code prohibit the distribution of a fentanyl-related compound when the person has reasonable cause to believe the drugs are intended for sale or resale. *See* Ohio Rev. C. §§ 2925.03(A)(2) & (C)(9). The statute further indicates Hines pled guilty to trafficking between 10 and 50 unit doses, or between 1 and 5 grams, of a fentanyl-related compound. Ohio Rev. C. § 2925.03(C)(9)(c). Hines was sentenced to two years of community control and received no prison time. *Hines*, non-document order dated March 16, 2020, No. G-4801-CR-0201902513.

Hines argues the fact he received no prison time is "indicative of the sentencing judge's conclusions that Mr. Hines was neither a dangerous nor a violent person." (Doc. No. 17 at 2). The lack of a prison sentence may diminish the seriousness of Hines's drug trafficking offense for purposes of the *Williams* inquiry. *See Williams*, 113 F.4th at 660, 663.

But drug trafficking is "[a] prime example" of a crime posing "a significant threat of danger." *Id* at 659. Although Hines received no prison time for his conviction, he pled guilty to trafficking fentanyl, "an exceptionally dangerous drug." *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020); *see also United States v. Harris*, 774 F. App'x. 937, 941 (6th Cir. 2019) (rejecting a due-process challenge to the sentencing enhancements for heroin-fentanyl mixtures because of "the dangers inherent in mixing fentanyl with heroin"); *United States v. Hart*, No. 22-3232, 2023 WL 7448744 at *3 (6th Cir. Nov. 9, 2023) (rejecting a challenge to a defendant's sentence for fentanyl trafficking where the district court "highlighted the drug's disastrous effect on Cuyahoga County"). As the Supreme Court recognized more than two decades ago, "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). Here, Hines's recent conviction for fentanyl trafficking contributes to a finding of dangerousness, even if his lighter sentence might reduce its probative value as an indicator of future danger.

Admittedly, Hines's case is not as clear-cut as *Williams*: the defendant there was convicted of attempted murder involving a firearm, two felony counts of aggravated robbery (which involved a deadly weapon), and a prior felon-in-possession offense. *Williams*, 113 F.4th at 662. "Any one of those convictions" would have sufficed to demonstrate Williams's dangerousness. *Id.* As described above, Hines's record is not as serious. But even if none of these prior convictions, standing alone, would suffice to show Hines is dangerous and may be disarmed consistent with the Second Amendment, Hines would not be entitled to relief. I must evaluate Hines's "criminal record" as a whole in considering his as-applied challenge. *Williams*, 113 F.4th at 663.

The government has alleged Hines was convicted of three felonies that carry with them a significant risk to the safety of a person or the community. One alleged conviction, the fentanyl trafficking offense, was named in *Williams* as a type of offense likely to lead to a finding of dangerousness, and Hines's conviction involved fentanyl, an especially dangerous and addictive narcotic. *See Williams*, 113 F.4th at 659. Another involves the mishandling of firearms, and prior firearms possession offenses are probative of whether a person's continued access to firearms would render him dangerous. *See id.* at 662. Finally, the grand theft offense, while perhaps the least probative of the three, nevertheless contributes to a finding of dangerousness because a theft offense generally risks creating a violent confrontation between the perpetrator and victim and because Hines made no attempt to rebut the presumption that such a conviction can show he is dangerous under the *Williams* analysis.

Further, these three convictions show a pattern of escalating dangerous conduct: while Hines was convicted of his grand theft offense nearly a decade-and-a-half ago, his firearm and drug trafficking convictions occurred in 2019 and 2020. This shows his dangerousness has not waned over time. I conclude these three alleged convictions show that Hines is sufficiently "dangerous" to be prosecuted under 18 U.S.C. § 922(g)(1) consistent with the Second Amendment. *Williams*, 113 F.4th at 663.[3]

**B.    EXCLUSION OF TIME UNDER THE SPEEDY TRIAL ACT**

I separately address the exclusion of time from the 70-day Speedy Trial Act clock related to my consideration of Hines's motion. *See* 18 U.S.C. § 3161 *et seq.* The motion became decisional on July 23, 2024, when Hines filed his brief in reply. (See Doc. No. 17). The 30-day period from July

---

[3] I need not determine whether the other three alleged prior convictions contribute to a finding of dangerousness because, as I have explained, the alleged grand theft, improper handling of firearms, and drug trafficking offenses establish Hines is dangerous and are thus sufficient to resolve this motion.

23, 2024, to August 22, 2024, is excludable under the Speedy Trial Act as the time Hines's motion was "actually under advisement." *United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1998) (citing 18 U.S.C. § 3161(h)(1)(J)).

The next day, on August 23, 2024, the Sixth Circuit issued its decision in *Williams*, modifying the legal landscape for Hines's Second Amendment challenge and prompting my reevaluation of the parties' arguments. On September 3, 2024, I scheduled a telephone status conference for September 12, 2024, to discuss the decision and determine whether the parties needed supplemental briefing. (*See* non-document entry dated Sep. 3, 2024). During the conference, the parties declined my invitation to offer supplemental briefing. (*See* non-document entry dated Sep. 12, 2024).

I considered the relevant factors under 18 U.S.C. § 3161(h)(7)(B) on August 23, 2024, the day *Williams* came down, and determined a continuance was necessary so I and the parties could evaluate Williams's impact on the pending motion. I found that "the ends of justice would be served by a continuance and would outweigh the defendant's and public's interests in a speedy trial." *United States v. Brown*, 100 F.4th 703, 712 (6th Cir. 2024) (noting that the district court's "ends of justice" findings need not initially be made on the record as long as they are placed in the record "by the time the district court rules on" a motion to dismiss under 18 U.S.C. § 3162(a)(2)). Accordingly, I exclude time under § 3161(h)(7)(B) from August 23, 2024, until September 12, 2024, the day of the status conference at which the parties declined to submit supplemental briefing.

### IV. CONCLUSION

For the reasons stated above, I deny Hines's motion to dismiss Counts 1 and 2 of the indictment. (Doc. No. 14). In addition, for the reasons stated above, I exclude time under the Speedy Trial Act from July 23, 2024 to September 12, 2024.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge